## E. H. CLARK, TO USE, v. L. W. MORSS ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF WAYNE COUNTY.

Argued February 25, 1891—Decided May 11, 1891.

1. The provisions of § 11, act of March 21, 1772, 1 Sm. L. 373, in relation to the assignment of the bond to be taken from the plaintiff in replevin, and the maintenance of an action thereon in the name of the avowant or person making conusance, affect only such bonds as are taken in replevin of a distress for rent.

2. But, in all cases wherein the question in dispute relates to the ownership of the property replevied, the suit on a replevin bond is properly brought in the name of the sheriff, to the use of the party beneficially interested: See Tibbal v. Cahoon, 10 W. 232; Balsley v. Hoffman, 13 Pa. 603.

3. There is no statute or rule of public policy prohibiting a sheriff from accepting a replevin bond containing a warrant to confess a judgment, when voluntarily tendered to him by the plaintiff. The warrant affects only the remedy on the bond; but the liability of the obligors is measured by its lawful conditions.

4. A judgment confessed on a replevin bond, containing a warrant of attor-

Statement of Facts.

ney, is cautionary only; and the confession cannot be held to be premature, when made three years after a verdict was entered in favor of the defendant in the action of replevin, though before judgment was entered on the verdict.

5. It is not error, on a trial of an action on a replevin bond, six years after the trial of the action in replevin between the parties, to enter an order, on motion of the plaintiffs, amending the record of the former action, by the correction of a clerical error in recording the verdict rendered.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 82 January Term 1891, Sup. Ct.; court below, No. 41 March Term 1887, C. P.

On March 15, 1887, judgment was entered in favor of Eben H. Clark, to use of B. K. Bortree and Matilda Bortree, his wife, in right of the wife, Dr. F. E. Bortree and Henry Bortree, against L. W. Morss and J. M. Fanning, upon a bond executed by the defendants, of date September 10, 1883, to Eben H. Clark, high sheriff of the county of Wayne, in the sum of twelve hundred dollars, concluding as follows:

" The condition of this obligation is such that if the said bounden L. W. Morss shall be and appear before the judges of the Court of Common Pleas, to be held in and for the county aforesaid the first Monday of October next, then and there to prosecute his suit with effect and without delay against B. K. Bortree, Henry Bortree, F. E. Bortree, and Amanda Bortree, wife of B. K. Bortree, for taking and unjustly detaining his goods and chattels, to wit: . . . . , and also make return of the goods and chattels, if return thereof be adjudged by law, and also save and keep harmless the said sheriff touching the replevying the goods and chattels aforesaid, then the above obligation to be void and of none effect, or else to be and remain in full force and virtue. And we do hereby confess judgment for the above sum, in favor of the said Eben H. Clark, sheriff, waiving inquisition and exemption, and release of all errors."

On May 3, 1887, the defendant Morss presented his petition averring that on the trial of the action of replevin, at No. 377 May Term 1883, the court directed a verdict for the defendants therein on a technical ground, although the right of

Statement of Facts.

property was shown to be in said L. W. Morss, the plaintiff therein; that no damages were found in said verdict, and none had ever been assessed; and that the chattels replevied had been purchased by said Morss at sheriff's sale and by him left with the defendants in said action, with the right to remove them at his pleasure. Thereupon, the court made an order directing the judgment entered on the bond to be opened, and the defendants to be let into a defence. An issue was framed accordingly.*

At the trial of the issue, on March 11, 1890, the plaintiffs offered the bond in evidence.

Mr. Wilson: We object to the admission of this bond: (1) because it does not sufficiently refer to and identify the replevin suit to which it makes reference; (2) because it is a bond with a warrant of attorney for the confession of judgment; (3) because it has never been assigned to the plaintiffs in this suit by the sheriff; (4) because they should have first issued a scire facias on this bond, in order to ascertain the damages, before proceeding upon the bond.

By the court: Objections overruled; exception.[1]

The plaintiffs then offered in evidence the record in the continuance docket, No. 377 May Term 1883, L. W. Morss against B. K. Bortree, Henry Bortree, Dr. F. E. Bortree and Amanda E. Bortree, showing: Summons in replevin for five cows, etc., etc.; replevin issued September 10, 1883; October 19, 1883, sheriff returned replevied six cows, etc., etc.; May 15, 1884, jury called, and they find for the defendants May 16, 1884; July 14, 1884, writ of retorno habendo issued, and sheriff returns "eloigned;" April 24, 1889, "judgment entered in favor of the defendant, B. K. Bortree, and against L. W. Morss, the plaintiff."

Mr. Wilson: We object to the admission of this record for the purpose of showing a breach of the conditions of the bond: (1) For the reason that it does not show that any judgment was entered in the replevin suit, at the time of the entry of the judgment on the bond. (2) The record shows that on April 24, 1889, judgment was entered in the replevin suit against the de-

* The form of the issue and the pleadings were not shown in the paper-books.

Charge of Court below.

fendants, and in favor of the plaintiff. · (3) The record shows no judgment against the defendants in the replevin suit, and if the judgment entered therein against the defendants and in favor of the plaintiff is a clerical error, the record does not show what judgment should have been entered against the plaintiff, whether judgment that the defendants should have return of the chattels irreplevisable, or judgment that the defendants recover the damages and costs sustained in that suit, by the taking of the property on the writ of replevin; and therefore, the record shows no breach of the conditions of the bond by the plaintiff in the replevin suit.

Mr. Purdy : I now ask that the clerk be directed to amend the record so that the record of the judgment shall conform to the verdict.

By the court: If any amendment of the record is asked, it must be founded on a motion in writing.

A motion being made in writing, the following order was made :

Record amended by making the following entry on continuance docket, in No. 377 May Term 1883 : " It appearing that a clerical error exists in the record, in that the names of the parties plaintiff and defendant are transposed in entering judgment on the verdict, now, March 11; 1890, the defendants above named move that the error be corrected so as to read ' judgment is entered against the plaintiff and in favor of the defendants.' Same day, plaintiff objects to the amendment, filing reasons therefor. Now, March 11, 1890, objection overruled, amendment allowed; exception."

By the court: Objections to the admission of the above-described records in evidence overruled; exception.[2]

It was admitted by the counsel for plaintiffs and defendants that Matilda Bortree, the present plaintiff, was the same person named in the replevin suit as Amanda Bortree, and that she was the wife of B. K. Bortree.

Testimony was then presented on both sides, upon the question of the actual ownership of the property in dispute.

At the close of the testimony, the court, DREHER, P. J., 43d district specially presiding, charged the jury in part as follows :

On the tenth day of September, 1883, Mr. Morss sued out a

Charge of Court below.

writ of replevin from this court against the Bortrees who now appear in the present suit as plaintiffs. That action of replevin was brought by Mr. Morss to recover the possession of five cows, two three-year old steers, set of light bobs, set of heavy bobs, a lumber wagon, a horse rake, a set of double harness, trace chains, fanning mill, scoop shovel, one gray mare and a hay rake. The replevin embraced other property, which, however, was not replevied; that is, it was not taken by the sheriff and delivered to Mr. Morss. But, by virtue of the replevin, the sheriff did deliver to Mr. Morss the property a list of which I have just read in your hearing. Instead of five cows, however, which were mentioned in the replevin, he delivered to Mr. Morss six cows.

A replevin is a writ sued out by one party claiming to have the right of possession of property in the possession of the defendant named in the writ. In such action of replevin, there may be involved simply the right to the immediate possession of the property, and there may also be involved the right of ownership. While the plaintiff in an action of replevin may have the title to the property, and be the real owner of it, yet the defendant may have the right, under some arrangement between himself and the plaintiff, to the possession. Therefore, it sometimes occurs that when the owner of property issues his replevin to recover the possession, he may be defeated in his suit by the defendant showing, though admitting the ownership of the plaintiff, that he, the defendant, by contract or arrangement with the plaintiff, is entitled to retain the possession.

When a plaintiff sues out his replevin, the sheriff is not bound to execute it until the plaintiff gives him security in the form of a bond signed by the plaintiff in the writ, and usually the sheriff requires of him some other person as security. Mr. Morss did execute a bond to the sheriff with Mr. Fanning as security. That bond was for the purpose of indemnifying and saving harmless the sheriff from any damages which might accrue to him for taking this property from the possession of Mrs. Bortree and her sons, and delivering it to Mr. Morss. The condition of the bond is in these words: . . . . .

That case did not come on for trial at October Term, 1883, but it came on for trial at May Term, 1884, and on the sixteenth

Charge of Court below.

day of May, 1884, Judge McCollum, before whom that case was tried, directed the jury to render a verdict in favor of the defendants in that suit, who were the Bortrees. The record of that suit has been given in evidence, and the charge of Judge McCollum, in which he distinctly stated to that jury that under the plaintiff's own statement he had prematurely sued out his writ of replevin, because the plaintiff then, as he now says, left the property in the possession of Mrs. Bortree. She, therefore, was in the lawful possession of it; and, if Mr. Morss was the owner, having left it in her possession, before he could sue out his writ of replevin successfully, he should have demanded the possession of the property; and, not having done that, Judge McCollum held that the only verdict that could be rendered in that suit, and on that trial, must be in favor of the defendants, the Bortrees. But he distinctly said, which of course was the law in the case, that that verdict did not settle the question of the ownership of the property. But Mr. Morss had failed to prosecute his suit with effect, and therefore there was a technical forfeiture of this replevin bond, whether he was the owner of the property, or whether he was not.

The sheriff, or the counsel for the Bortrees, had a judgment entered on this bond for the penalty named in the bond. That judgment was subsequently opened by this court, so as to allow Mr. Morss an opportunity to be heard, and it is now a question for you to determine under the evidence in the present case whether Mr. Morss was the owner of that property in September, 1883, when he sued out his replevin.

In 1880, Mr. Morss held one judgment in his own name against B. K. Bortree, and was interested in a second judgment against him, in this court; and in June of that year he caused an execution to be issued on those judgments, as he had a right to do, and levied upon certain personal property of B. K. Bortree, the husband of Matilda Bortree, and who is named as one of the plaintiffs in the present case, though his name, as it stands upon the record, is simply a matter of form, because the suit is brought in the right of his wife, Matilda Bortree. Upon these executions, as you have learned from the evidence, the sheriff levied upon considerable property on the farm where the Bortree family then resided. At that sale, Mr. Morss be-

came the purchaser of considerably more personal property
than is now in dispute in this suit. There was some of the
property which he bought at that sheriff's sale, in the shape of
grain in the ground, which has since been used up by some-
body, so that he could not recover that specific or identical
grain in the ground in his action of replevin brought in 1883.
He became thus the rightful and legal owner of all the prop-
erty which he purchased at that sheriff's sale. Mrs. Bortree
alleges that after the sheriff's sale there was a contract or bar-
gain between herself and Mr. Morss, by which he sold to her
this same property. Mr. Morss says that he did not sell her
the property, but that he left it there on the premises by an
understanding between himself and Mrs. Bortree, she thinking
that she would be able to pay Mr. Morss the money that was
due him, or the advances which he had made.

Now, the question for you to determine is whether that was
a sale, an absolute sale made by Mr. Morss to Mrs. Bortree on
that occasion. In order to make a sale of personal property
there must be a coming together of the two minds of the seller
and the buyer, the seller agreeing to transfer the ownership of
the property to the buyer, either receiving for it money, or
other valuable consideration, at the time of the sale, or a prom-
ise on the part of the buyer to pay for it at some future time.
Those are the elements that enter into an absolute sale of per-
sonal property. There may be, and frequently is, what is
called a conditional sale, where the seller delivers over to the
purchaser the possession of the property, with the understand-
ing that the seller is to remain the owner of the property until
it is paid for. Under such a contract, the seller would have
the right to take the possession of that property, if the other
party does not pay for it. So, there may be what in law is
called a bailment of personal property, a mere loaning of the
property for some consideration for its use, and that may be
merely nominal. The owner of property may permit it to re-
main in the possession of another for a certain, or an indefinite
period of time, he having the right, unless he has entered into
a contract that it shall remain for some definite time, to go
and take possession at any time he pleases.

Now, what is the evidence in relation to this alleged con-
tract? . . . . . Taking all this evidence into consideration you

must determine what was the understanding and arrangement between these parties at that sheriff's sale. Did Mr. Morss intend to sell that property to Mrs. Bortree, and take her promise of payment in consideration of it, and transfer to her the ownership? Did Mrs. Bortree then intend to buy it, and agree to pay whatever price may have been named for it, and in consummation of that contract was the property left there as hers, Mr. Morss to look to her for his pay? You must take into consideration the testimony of Mrs. Bortree, and that of Mr. Morss, and that of the daughter. It is incumbent upon these plaintiffs to show you by the weight of evidence that there was this contract between Mrs. Bortree and Mr. Morss. She, being the plaintiff in this case, must satisfy you by the weight of evidence of that fact. The burden of proof is upon her. . . . .

If you find that there was a conditional sale, such as I have described to you, and that Mrs. Bortree actually paid for the property afterwards, then she would be entitled to a verdict for the value of the property. If any property was taken by Mr. Morss, or by the sheriff for him on this replevin, that was not sold to him by the sheriff, not being the natural increase of any of the cattle that he may have left there, then the plaintiffs would be entitled to recover for such other property. But, if Mr. Morss was the owner, if he did not make an absolute sale to Mrs. Bortree, then of course he was not only the owner of the cattle that were then there, but he would be entitled to all the natural increase from the original stock. If there was a conditional sale to Mrs. Bortree, and she did not pay for the property, then of course she cannot recover for it in this action.

The plaintiffs' counsel have submitted certain points in writing, requesting us to instruct you as follows : . . . .

The defendants' counsel have asked us to charge you as follows :

1. The evidence fails to prove a contract between Morss and Mrs. Bortree of such a character as to vest in her the title to the property purchased by him at sheriff's sale.

Answer: That point I refuse, because the facts are for the jury. You must determine, under the evidence, whether there was a contract, and I have stated to you what constitutes a good sale of personal property.[3]

—The jury returned a verdict for the plaintiffs for $627.72. Judgment having deen entered, the defendants took this appeal, assigning for error:

1, 2. The admission of plaintiffs' offers.[1][2]

3. The answer to the defendants' first point.[3]

*Mr. H. Wilson* (with him *Mr. A. T. Searle*), for the appellants.

Counsel cited: (1) Section 12, act of 1705, 1 Sm. L. 44; statute of Westminster 2d, c. 2, 13 Edw. 1; statute of Marlbridge, c. 21, 52d Henry III.; § 11, act of March 21, 1772, 1 Sm. L. 373; Power v. Graydon, 53 Pa. 201; Beacom v. Holmes, 13 S. & R. 190; McKee v. Stannard, 14 S. & R. 380; Hutton v. Helme, 5 W. 346; Dole v. Moulton, 1 Johns. Cas. 129. (2) Eldred v. Bennett, 33 Pa. 183.

*Mr. George S. Purdy* (with him *Mr. P. B. Kimble*), for the appellees.

Counsel cited: Saeltzer v. Ginther, 2 M. 86; Sharp v. United States, 4. W. 21; Morse v. Hodson, 5 Mass. 314; Slutter v. Kirkendall, 100 Pa. 307; Gibbs v. Bartlett, 2 W. & S. 33; Balsley v. Hoffman, 13 Pa. 603; Pittsb. N. Bank v. Hall, 107 Pa. 583; Morris on Replevin, ed. 1849, 190.

OPINION, MR. JUSTICE McCOLLUM:

The appellants attack the original judgment in this case on two grounds. They contend, first, that the bond was invalid because it contained a warrant of attorney to confess judgment; and, second, that it was not forfeited at the time judgment was entered upon it. In support of their claim they refer to the record of the suit in which the bond was given, and to the eleventh section of the act of March 21, 1772, 1 Sm. L. 373. The record to which reference is made shows a verdict in favor of the defendants on the sixteenth of May, 1884, and a judgment on the verdict on the twenty-fourth of April, 1889. The judgment on the bond was entered on the fifteenth of March, 1887, by virtue of the warrant of attorney contained therein. The theory of the appellants is that any proceeding on the bond prior to final judgment in the action of replevin was premature; that the bond in replevin is prescribed by law; and that the

Opinion of the Court.

warrant of attorney to confess judgment was in excess of the statutory requirement, and rendered the whole instrument void. But it is clear that the act of 1772 is limited to a replevin of a distress for rent, and is not applicable to a case in which the title to the property replevied is the subject under investigation.

It is now settled that the provisions of the act in relation to the assignment of the bond and the maintenance of an action thereon in the name of the avowant or person making conusance, affect only such bonds as are taken in replevin of a distress for rent. In all other cases the suit on a replevin bond is properly brought in the name of the sheriff, obligee, to the use of the party beneficially interested: Morris on Replevin, 268, 269; Tibbal v. Cahoon, 10 W. 232; Balsley v. Hoffman, 13 Pa. 603. The bond in suit is not condemned by the act of 1772, and there is no decision of this court that the warrant to confess judgment invalidates it. Replevin bonds with like warrants are not uncommon in Pennsylvania. In the appendix to Morris on Replevin, the forms of bonds in use in Philadelphia in 1849 and in 1869 are given, and these contain a warrant to confess judgment. It is stated by the counsel for the appellees, in their paper-book, that in their district these bonds are in common use, and we learn from reported decisions of the courts of Common Pleas that they are taken in other parts of the state: Dillon v. Wetzler, 10 L. Bar. 5; Shippley v. Evans, 3 Kulp 438. In Neville v. Williams, 7 W. 421, the plaintiff in a replevin confessed a judgment to the sheriff for his protection in executing the writ, and it was held that the sheriff was not restrained by any law from taking such security, and that process might be issued upon it for the use of the party beneficially interested. Morris, in his work already referred to, says: "It seems that a warrant to confess judgment would be binding, though the sheriff might not be justified in insisting on such a provision." In Shippley v. Evans, supra, Judge Elwell, in a well-considered and satisfactory opinion, sustained a judgment entered on a replevin bond by virtue of the warrant of attorney contained in it. There is no statute or rule of public policy which prohibits a sheriff from accepting such a bond, if it is voluntarily tendered to him by the plaintiff in the replevin. The warrant to confess judgment affects

Opinion of the Court.

the remedy on the bond, but the liability of the obligors is measured by its lawful conditions.

In the present case, the judgment entered on the replevin bond was opened to allow the appellants to take defence on the merits. The affidavit on which their motion to open the judgment was founded contained no suggestion that the bond was invalid, or that it was obtained from them by artifice or coercion, and there was no attempt on the trial to show that it was not their voluntary obligation. This bond was not taken under the statute to secure the return of a distress for rent, but in a case relating to property in chattels, and it depends on usage for its validity: Balsley v. Hoffman, supra. The question is, not whether the sheriff may lawfully exact such a bond, but whether it may, when voluntarily given, be enforced. No presumption of fraud or coercion arises from the presence of the warrant to confess judgment. It does not enlarge the obligation, but facilitates the enforcement of it. The real purpose of the bond is indemnity to the sheriff, and whatever form of security is intelligently and freely agreed upon by the parties is binding upon them. We hold, therefore, that the bond in this case and the judgment entered upon it were valid.

The latter was not premature. It was authorized by the terms of the bond and warrant, and was cautionary only. But, aside from this, it was entered nearly three years after the verdict in the replevin suit, and the bond was forfeited by the failure of the principal obligor to prosecute his suit with effect: Gibbs v. Bartlett, 2 W. & S. 29; Pittsb. N. Bank v. Hall, 107 Pa. 583.

The amendment to correct a clerical error in the entry of judgment on the verdict in the action of replevin was properly allowed.

The question of the ownership of the property replevied was for the jury upon the evidence, and it was submitted with instructions which carefully guarded the rights of the appellants. Their claim respecting the title to this property has been denied by two juries, after full and fair hearings have been allowed them, and they have no just cause to complain of the action of the court. The specifications of error are dismissed, and

　　　　　　　　　　　　The judgment is affirmed.