[PHILADELPHIA, JANUARY 7th, 1837.]

BEYER *against* FENSTERMACHER and Another.　　　| ‾2wh 95|
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　|168　49|

IN ERROR.

1. A plaintiff in replevin founded upon a distress for rent, cannot set off a debt due to him by the landlord or a demand against the landlord, not connected with the rent or the occupation of the premises.
2. A landlord may distrain for rent, which by the agreement of the parties is payable *in advance.*
3. Notice of set-off and other special matter must be given, although the evidence offered to establish such matter, has been given on a former trial of the cause, before arbitrators.

THIS was a writ of error to the Court of Common Pleas of Lehigh county, in which William Beyer brought an action of replevin against William Fenstermacher and George Hortz.

Fenstermacher avowed for rent in arrear; and issue being joined on this question, the cause came on for trial before Judge BANKS on the 1st of September 1836, when the defendant gave in evidence a written lease executed by himself and the plaintiff, dated in the month of February 1834, by which he demised to the plaintiff a certain house and lot for the term of one year at the rent of $150 "payable quarter-yearly; the first $37 50 on the first day of *April* 1834, the second on the first day of July 1834, the third on the first day of October 1834, and the last on the first day of January 1835: The lease commences on the first day of April 1834, and expires on the first day of April 1835."

Under this agreement Beyer entered into possession on the first of April 1834, and continued there until the first of April 1836. It appeared that the rent for the first four quarters had been duly paid, and that the distress had been made for the three quarters commencing respectively on the 1st of April 1835, 1st of July 1835, and 1st of October 1835.

The plaintiff then offered to prove that he had paid for and on behalf of Fenstermacher the amount of a certain promissory note, whereby the defendant and one Trumbauer promised to pay a certain sum to one Frantz; that he had made certain other payments on his account, and that Fenstermacher had boarded and lodged with him (the plaintiff) during the occupation of the house, and had thereby become indebted to him to an amount exceeding the claim for rent.

The defendant objected to this evidence, on the ground that it

(Beyer *v.* Fenstermacher.)

was offered to prove a set-off, which was not admissible in replevin; and the Court rejected it; to which the plaintiff excepted. The plaintiff then examined a witness with a view of proving that the defendant had agreed that the sums so paid should be deducted from the rent.

The counsel for the plaintiff, contended that a distress cannot be made for rent payable in advance.

The Court in charging the jury, told them that a set-off was not admissible under the pleadings in the action; but that if the articles charged were agreed to be accepted by Fenstermacher as a payment of the rent in part or in whole, they ought to allow them; but unless they were satisfied from the evidence that he did so agree, the amount claimed by the plaintiff could not be deducted from the rent.

On the subject of the right to distrain for rent payable in advance, the Judge expressed himself as follows:—

" By the 1st section of the act of the 21st of March 1772, the sale of any goods distrained for any rent reserved and due upon any demise, lease or contract whatsoever, is authorised. The manner in which the sale shall be conducted is therein prescribed, and also the remedy of the tenant is there pointed out.

The words are, *any rent reserved and due upon any demise*, &c. In this case the rent was reserved. It was made payable on a particular day. On that day it became due by the express contract of the parties. It then was rent reserved and due on a demise; and if not paid, the landlord might distrain. The parties stood in the relation of landlord and tenant. Their contract was a lease to all intents and purposes. They made their own terms in their agreement; and each party might rightfully employ all the remedies provided by law for landlords and tenants, according to the merits of their case. The law gives the remedy by distress; and there is nothing in the lease which would or could take it away or deprive the landlord from using it. By the third section, if a landlord distrains and sells when no rent is due, the owner of the goods may recover double the value of the goods with full costs. If these goods had been sold, could Beyer have recovered under this section, although he had not paid the quarter's rent made payable in advance? We think not. It must appear that no rent was in arrear and due. Here the rent, if not paid, would by the express agreement of the party, be in arrear and due. The rent being in arrear and due by the terms of the lease, could be distrained for. This would appear to be decisive of the question. If it could not be distrained for, it must be because no rent was due; for in this act we have an entire system in regard to this subject. The 7th section defines what may be distrained. The first section provides for the

sale of the goods distrained. It appears then that by law, Fenstermacher had a right to distrain for the quarter's rent, as soon as it was due, without waiting until the last day of the quarter. This right he might exercise unless the rent was paid. If it was paid he could not distrain. Whether it was paid, or whether any rent was due on the lease at the time the warrant was issued, we leave to you to decide from the evidence in the cause."

The plaintiff's counsel excepted to this charge, and on the removal of the record, assigned for error the rejection of the evidence offered, and the charge of the court on the subject of the payments by the plaintiff, and of the right of distress.

Mr. *Porter*, for the plaintiff in error, on the first point, argued that the jury were to ascertain the amount of rent, if any, due to the landlord; and that, whatever might be the technical rule as to set-off, evidence ought not to be excluded, which went to reduce the amount claimed by the landlord, *and to show that he was a debtor to the tenant. Albright* v. *Pickle,* (4 *Yeates,* 264.) *Smith* v. *Aurand,* (10 *Serg. & Rawle,* 92.) Act of 1810, § 20. It was not necessary to give notice of set-off, because the case had been tried before arbitrators, and the evidence gone into before them. [CURIA.—We have several times decided that notice of special matter is necessary, although the evidence may have been given before arbitrators.]

On the second point he said, that there had not been any express decision in this state. In *Diller* v. *Roberts,* (13 *Serg. & Rawle,* 60), Chief Justice TILGHMAN declined expressing any opinion on the subject. In *Buckley* v. *Taylor,* (2 *Term Reports,* 600,) it is said that the landlord may distrain where there is a custom authorising it. The power given to the landlord is a large one, and ought not to be extended beyond the case of rent due for past occupation.

Mr. *Scott,* for the defendant in error, on the question of set-off, cited *Montague on Set-Off,* 18; *Buller's N. P.* 181; 6 *Bac. Abr.* 83; *Woodfall on Landlord and Tenant,* 495; 6 *Taunton,* 523; *Peterson* v. *Haight,* (1 *Miles,* 250;) *Gray* v. *Wilson,* (4 *Watts,* 39.)

On the right of distress, he argued that it existed wherever rent was due and payable; and in this case the distress was made after the time when the rent became due and payable, by the express agreement of the parties.

The opinion of the court was delivered by

KENNEDY, J.—The two first errors assigned may be considered together, as they present the same question, whether a tenant has a right to set-off a debt, owing to him by his landlord, against the rent which he owes to the landlord, and for which the latter has distrained. It may, however, be proper to notice, first, that it was

alleged by the plaintiff, that the note mentioned in the first bill of exceptions, was taken up and paid by him at the instance of the defendant, who agreed, as he says, to allow him the amount thereof out of the rent; but then, as he failed entirely to give the smallest spark of evidence, from which a jury could have drawn such a conclusion, it is perfectly clear that he was not entitled to give it in evidence, in order to show a payment of the rent *pro tanto,* by force of any agreement between them; so that, unless the plaintiff was entitled to have it allowed upon the principle of a set-off, he had no right to claim that the note should have been read in evidence to the jury.

It may also be remarked, that the giving of the note in evidence, might have been objected to, because it was not the note of the defendant alone; but a note drawn by him and Thomas Trumbauer, who is admitted to be still alive, whereby they promised to pay the amount thereof jointly and not severally; and, therefore, for want of mutuality, not such a demand against him as could have been set off under our defalcation act, even had he brought an action of debt or *assumpsit* against the plaintiff to recover the rent for which he distrained. *Henderson* v. *Lewis,* (9 *Serg. & Rawle,* 379.) This objection, however, does not appear to have been made in, or to have been presented to the view of the court below; but the matter rather seems to have been decided upon the broad ground, that the plaintiff in this action, which is a replevin, founded upon a distress for rent, due and in arrear, had no right, under the defalcation act, to be allowed as a set-off against the rent, a debt or demand owing to him by his landlord, for and on account of a consideration, having no connection in any way with the rent or the occupation and enjoyment of the demised premises. If the court were right in this, neither of the two first errors can be sustained.

The words of the first section of the defalcation act are, " If two or more dealing together, be indebted to each other upon bonds, bills, bargains, promises, accounts, or the like, and one of them commence an *action* in any court of this province, if the *defendant* cannot gainsay the *deed, bargain* or *assumption upon which he is sued,* it shall be lawful for such *defendant* to plead payment of all or any part of the *debt* or *sum* demanded, and give any bond, bill, receipt, account or bargain in evidence; and if it shall appear that the *defendant* hath fully paid or satisfied the *debt* or *sum demanded,* the jury shall find for the defendant, and judgment shall be entered that the *plaintiff* shall take nothing by his writ, and shall pay the costs. And if it shall appear that any part of the sum demanded be paid, then so much as is found to be paid, shall be defalked, and the plaintiff shall have judgment for the residue only, with costs of suit. But if it appear to the jury that the plaintiff is overpaid, then they shall give in their verdict for the defendant, and withal certify to the court how much they find the plaintiff to be indebted or in arrear to the defen-

dant, more than will answer the debt or sum demanded; and the sum or sums so certified shall be recorded with the verdict, and shall be deemed as a debt of record; and if the plaintiff refuse to pay the same, the defendant for the recovery thereof shall have a *scire facias* against the plaintiff in the said action, and have execution for the same with the costs of that action." Now it is very certain that a distress made by a lessor upon the goods of his lessee or tenant for rent, which has become due and in arrear, cannot be considered an *action commenced* by him; and therefore under this view, the case cannot be brought within the words of the act, so as to give the tenant the right of setting off any debt which may be owing to him by the landlord. So again it is equally certain that an action of replevin commenced by the tenant against the landlord, for the recovery of the goods distrained on, cannot be considered as a suit upon " a *deed, bargain* or *assumption,*" according to the words of the act, which at most embrace only actions of debt, covenant and assumpsit. But an action of replevin instead of being founded on a *deed, bargain* or *assumption,* is regarded as grounded upon a *tortious taking* of the goods by the landlord; and unless they are wrongfully taken, the action cannot be maintained. Under this view of the subject, it has been ruled under the English statutes of 2 Geo. 2, cap. 22, sec. 13, and 8 Geo. 2, cap. 24, sec. 4, which enact that where there are mutual debts, though deemed in law to be of different natures, between the plaintiff and defendant, one debt may be set against the other, that no set-off can be pleaded to an avowry for rent, because the statutes do not apply to distresses. *Absalom* v. *Knight,* (*Barnes,* 450, 4to ed. S. C. *Bull. N. P.* 181.) *Laycock* v. *Tufnel,* (2 *Chitty's Rep.* 531; S. C. 18 *Eng. Com. Law Rep.* 409.) *Chambers on Landlord & Tenant,* 645. 1 *Tidd's Prac.* 716.

I also think that it may be fairly inferred that such was the opinion entertained by the legislature of this state in 1810, when it acted upon this subject, so far as to give justices of the peace power in cases of rent, not exceeding one hundred dollars, to compel the landlord to defalcate or set off the just account of the tenant out of the same, (*Purd. Dig.* 502). For had it then been considered the law of the state, that the tenant had the right in an action of replevin sued out by him, upon his goods being distrained, to recover the possession of them, to set off any just account or debt owing to him by his landlord against the rent, there would seem to have been little, if any occasion for making such provision.

I am not aware that any exception has ever been taken, or dissatisfaction expressed against this course of reasoning, excepting that Lord KENYON is reported in *Sapsford* v. *Fletcher,* (4 *Term Rep.* 512-13,) to have said, " it is much to be lamented that it should have been so decided." And again Chancellor TAYLOR in *Nicholson et al.* v. *Hancock et al.* (4 *Hen. & Munf.* 498,) said he did not approve of the reason given for the English decisions on this subject, namely

(Beyer *v.* Fenstermacher.)

"that a *replevin* (*distress*, I presume he meant,) is not an *action*, but a remedy without suit, and like an action for a tort"—meaning by this latter clause, as I take it, that replevin was an action founded upon a tort; or otherwise it appears to me, that he has misrepresented the reason given for the English decisions.

But it has been argued here, that the defendant in replevin who avows for rent in arrear, ought to be regarded as the plaintiff therein claiming his rent, which is debt growing out of a contract, and the enjoyment of the demised premises under it. This argument, I am willing to admit, is not without plausibility, and would seem to receive some countenance from the Virginia adjudications on this subject, though they have not been referred to. See *Turberville* v. *Self*, (1 *Wash. Rep.* 71,) and *Nicholson* v. *Hancock*, already mentioned. These decisions however, as I apprehend, were made in order to meet and to carry into effect certain statutory provisions of the state, the true meaning of which might otherwise have been frustrated. But it is a sufficient answer here to this argument, that though a defendant in replevin be an actor as well as the plaintiff, yet he has never been held to be the plaintiff. The replevin cannot be said to be his suit; nor can he be considered the complainant. And upon this ground it was decided in *Long* v. *Buckeridge*, (1 *Strange*, 112,) that he could not discontinue the action. "It is the plaintiff's suit, (said the court,) and how can one man discontinue another's suit." And in *Cone* v. *Bowles*, (4 *Mod.* 7, 8,) the action being replevin, judgment was rendered in the Common Pleas in favour of the avowant, for a return of the goods, damages and costs; and upon writ of error brought in the King's Bench by the plaintiff, in the replevin below, the judgment being affirmed, a motion was made that the avowant might have costs upon the statute of 3 Hen. 7, cap. 19, which enacts that the *plaintiff* shall recover costs and damages, when the *defendant* brings a writ of error to delay the execution of the judgment. In support of the motion it was argued, as here, that the *avowant* was in the nature of a *plaintiff*, and had a judgment *de retorno habendo*, as well as for damages and costs given him, and was therefore within the reason of that statute, because his execution was delayed by such writ of error, as much as the judgments obtained by the plaintiffs in other actions; and consequently came also within the equity of the statute of 3 Jac. 1, cap. 8, which appoints bail to be given in a writ of error to prosecute it with effect, and to pay all costs and damages to be awarded for delaying execution. But the court refused to allow costs, and accordingly it was held in *Golding* v. *Dias*, (10 *East*, 2,) that an avowant in replevin for rent in arrear, for whom a verdict and judgment had been given in the Common Pleas, which were affirmed on a writ of error, brought in the King's Bench by the plaintiff below, was not entitled to be allowed interest on the sum recovered, by force of the statute of 3 Hen. 7, cap. 10, because the statute was

confined in its terms to judgments recovered by *plaintiffs* below, and affirmed on writs of error. Thus showing that courts have never gone so far in the construction of statutes, as to consider the *plaintiff* in an action of replevin the same, or as standing on the same footing, with *defendants* in other actions, and therefore make him liable as such to costs or damages, where the terms of the statute extended to *defendants* only, *eo nomine;* nor yet to give to the avowant therein, for rent in arrear, any benefits or advantages granted to *plaintiffs* named in the same way.

But there are still other objections to the application of our defalcation act to actions of replevin, founded on distresses for rents due and in arrear, which it is difficult to overcome, and that do not arise from the provisions of the English statutes. As for instance, suppose that the tenant, the plaintiff in the replevin, has an account or debt against his landlord, the avowant, of equal amount with the rent due, and is permitted to give it in evidence to the jury as a set-off, in order to extinguish the rent. But the avowant has a debt, beside the rent against the tenant, of twice the amount of the tenant's debt against him, which he offers to give evidence of, for the purpose of satisfying the tenant's claim, and re-establishing his own right to the rent, will he not have a right to do so? If the tenant be permitted to give his claim in evidence as a set-off against the rent, there is less objection under the terms of the act, to the landlord's giving his debt against the tenant, besides the rent, in evidence, for the purpose of liquidating the tenant's claim against him. This being all done, what will be the consequences, according to the provisions of the act? The aggregate of the landlord's claim against the tenant, including the rent and debt, is three times the amount of the tenant's claim against him; so that, as the jury are required by the act, to adjust their respective demands, and to find in whose favour the balance is, and the amount thereof, it would seem to follow that the landlord in such case would be entitled to a verdict for a sum equal to double the amount of his rent, which was all he did or could distrain for. Then what becomes of the liability of the sheriff and the sureties taken by him of the tenant, in the replevin bond, before he executed the writ? Is their liability to be extended to cover the amount of the verdict; or are they to be released from all liability? To extend their liability, would be gross injustice towards them; and to release them from all liability, might be doing equal injustice to the landlord. The actual amount of the rent, that was due at the time of the distress, with the interest subsequently accruing thereon, and the costs of the action, is the utmost sum that they ought to be held responsible for; but if a settlement of all other claims and accounts, between the landlord and tenant is to be gone into and made by the jury, it may be impossible in many cases, where there is a controversy as to the amount of the rent due, as well as to the amount and justice of the accounts, to ascertain

(Beyer *v.* Fenstermacher.)

from the verdict, which gives the sum merely that the jury find to be coming to the landlord, without any statement of the respective claims of the parties, and what of those claims were rejected or allowed, what portion of the rent claimed by the landlord was allowed by the jury; and hence where the finding of the jury is in favour of the landlord, great injustice may be done sometimes to sureties, if they are to be held liable on their bond, as I apprehend they must. It is obvious therefore, that to attempt to apply, and carry out into practice, the various provisions of the defalcation act, in the action of replevin, would be attended with great perplexity as well as probable injustice in some cases. We therefore feel satisfied, that it ought not and was not intended to be so applied; and that a set-off can neither be pleaded nor given in evidence in such action by the defendant, and still less, if possible, can it be so done by the plaintiff. The two first errors are therefore not sustainable.

We also think that the third error cannot be sustained. After a lessee has entered into and taken possession of the demised premises, agreeably to the terms of the lease; and the rent or any portion of it, has become payable according to the provisions thereof, it is then clearly due, though not before; and if not paid, the lessor has an unquestionable right to distrain for it. Here it must be taken, that by the terms of the lease, the first quarter's rent became payable on the first day of the quarter, and that the rent of each succeeding quarter became payable also on the first day thereof; because it was left by the court to the jury, to be decided by them from the evidence, as a question of fact, whether such was not the agreement of the parties; and the jury having returned a verdict in favour of the avowant for the amount of his claim, must have found that it was so. The moment the plaintiff here took the possession of the premises under the lease, the relation of landlord and tenant between the landlord and him became complete. The term, with the possession thereof, became vested in the plaintiff, and the reversion alone remained with the defendant; and hence, as soon thereafter as by the terms of the lease the rent or any portion thereof became payable on a certain day, and remained unpaid until the day following, the defendant had a right to resort to the remedy of distress for the recovery thereof. This remedy is incident by the rules of the common law, to the reversion, which still remained here with the defendant; and he had precisely the same right to use it, that he had to use any other; and that he became entitled upon the rent's falling due, according to their agreement in the lease, to some remedy for the recovery of it; will not, I presume, be questioned, or otherwise he would have a right without a remedy, which cannot be.

The fourth error, which is the last, is but a repetition of the same

(Beyer *v.* Fenstermacher.)

question, involved and decided in the two first, and cannot be sustained. The judgment is therefore affirmed.

Judgment affirmed.