# Hollidaysburg Male and Female Seminary Company *v.* Gray, Appellant.

*Appeals—Harmless error—Evidence—Admission of testimony previously excluded.*

1. A judgment will not be reversed for the exclusion of testimony, where the appellant both before and after the ruling was permitted to give substantially the evidence covered by the rejected offer.

*Landlord and tenant—Covenants for repairs—Heating plant—Evidence—Papering—Profits—Speculative damages.*

2. Where a landlord has covenanted to pay for repairs to furnace and heating plant, the tenant, in an action for rent, may show as a defense that the furnace broke completely down in the winter; that the landlord upon being notified, promised to make the necessary repairs, but failed to make them; and that in consequence the building was without heat for one month in very cold weather, except for oil and gas stoves put in by the tenant, which were inadequate.

3. Where a landlord agrees to "do what papering is necessary," in a large building used as a school, which contained many more rooms than were needed for the accommodation of the pupils in attendance, the landlord will not be required to paper every room that was previously unpapered.

4. In an action to recover rent for a large school building, where the tenant sets up as a defense that her prospects of running the school were ruined by the failure of the landlord to perform his covenants for repairs, the trial court commits no error in rejecting offers of evidence by defendant as to the amount of money which she invested in furniture, pianos and other articles for the school building. Such evidence is too speculative as a basis for measuring damages.

5. Where a lease contains no specific covenant on the part of the landlord to repair the roof of the building leased, the landlord will not be liable for such repairs.

Argued Oct. 26, 1910.  Appeal, No. 123, Oct. T., 1910, by defendant, from judgment of C. P. Blair Co., March Term, 1910, No. 305, on verdict for plaintiff in case of Hollidaysburg Male and Female Seminary Company v. Charlotte C. Gray.  Before Rice, P. J., Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ.  Affirmed.

Assumpsit for rent.  Before Shull, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $308.75.  Defendant appealed.

*Errors assigned* were (1–15) various rulings and instructions which sufficiently appear by the opinion of the Superior Court.

*W. C. Fletcher*, with him *Robert W. Smith*, for appellant.

*W. I. Woodcok* and *O. H. Hewit*, with them *B. F. Warfel*, for appellee, cited: Moore v. Weber, 71 Pa. 429; Wayne v. Lapp, 180 Pa. 278.

Opinion by Rice, P. J., March 3, 1911:

The lease involved in this action was for the term of three years from July 18, 1906, at a yearly rent of $1,445, payable in sums of $361.25 at the expiration of each quarter.  The defendant took possession of the premises, a large seminary building, and paid $361.25 rent on each of the following dates: October 18, 1906, January 19, 1907, September 7, 1907, January 18, 1908.  This action was brought in May, 1908, and the arrears of rent then due by the terms of the lease amounted to $1,083.75.  In defense to the action, the defendant set up a claim for damages

arising out of the alleged failure of the plaintiff to repair the building according to its contract. This claim exceeded the arrears of rent. But the verdict as recorded was in favor of the plaintiff for $308.75, the jury thus sustaining the defendant's claim to the extent of $675. From the judgment on the verdict the defendant took this appeal and filed fourteen assignments of error. The fourteenth is to a portion of the charge, and the other thirteen are to the rejection of offers of evidence. It will.aid to a correct understanding of the questions sought to be raised by the assignments, to quote at length the provision of the lease as to repairs, and, also, a portion of an undertaking of the plaintiff upon the faith of which, it is claimed, the defendant executed the lease and took possession. The latter is contained in a letter dated June 2, 1906, addressed to the defendant by the plaintiff, through its secretary, and, so far as material here, reads as follows: "Rev. A. F. Walker, Principal of the Hollidaysburg Seminary Company of this place, has placed a proposition before us of yours; and in answer thereto permit me to say, on behalf of the Seminary Company we will agree to put in a bath room complete on the first floor; fresco the walls of the second floor; do what papering is necessary, and adjust, if possible, the difficulty of smoke in the parlor; build a new front porch or veranda; and do such other things as we deem essential for the good of the building, and the comfort of yourself and the members of the school." The clause of the lease relating to repairs reads as follows: "The said party of the second part to pay for all the ordinary repairs that may be necessary to keep the inside of said building in as good condition as it now is, including replacing of broken glass in the windows, door locks, keeping the closets, sinks, faucets, and sewer connections in good repair, provided only ordinary repairs to the closets, sinks and sewer connections are needed and the party of the first part to pay all expenses for repairs to the furnace, radiators or in any way connected with the heating plant, for all other repairs to the inside of the building that in

any way improve or add to the same and which are not made necessary by the negligence of the party of the second part."

By affirming a point submitted by the defendant, the court instructed the jury that the plaintiff was bound to make the repairs called for in the lease and in the letter of its secretary, and that for any failure to make the promised repairs the defendant might deduct or offset any damages she sustained thereby. And in the portion of the general charge that is embraced in the fourteenth assignment of error, the court instructed the jury that, if the deduction was sufficient to wipe out the plaintiff's claim, their verdict should be for the defendant. That these instructions, taken in connection with the affirmance of the defendant's point, were as favorable to her as she had a right to ask, is too plain for argument. We may, therefore, proceed at once to a consideration of the rulings upon evidence.

As the plaintiff had covenanted in the lease to pay all expenses for repairs to the furnace, radiators, or in any way connected with the heating plant, evidence that in the winter of 1906 and 1907 the furnace broke down completely; that the plaintiff, upon being notified, promised to make the necessary repairs, but failed to make them; and that in consequence the building was without heat for one month in very cold weather, except for oil and gas stoves furnished by the defendant, which were inadequate, was relevant to the issue and admissible. If we were to look only to the ruling complained of in the first assignment, it would seem that the defendant was prevented from proving these facts. But, upon examination of the entire record, we find that both before and after the ruling was made the plaintiff testified quite fully upon the subject, narrating the facts substantially as they were stated in the offer, and that her witness Curry testified in corroboration of her in many particulars. In his charge, the learned judge called the attention of the jury to the defendant's claim to damages arising out of the breaking

down of the furnace, as well as to the plaintiff's testimony
bearing upon the same subject, and submitted the ques-
tion to them in a clear and impartial manner that is not
excepted to. So that if the ruling embraced in this as-
signment was erroneous, the error was harmless. The
general rule, that a judgment will not be reversed for the
exclusion of testimony where the appellant both before
and after the ruling was permitted to give substantially
the evidence covered by the rejected offer, is well sus-
tained by numerous authorities, and is applicable here.
The tenth assignment bears on the same subject. The
defendant was asked whether the lack of heat affected
the attendance at the seminary. The court permitted her
to state whether or not any persons left the seminary at
that time, and to name the persons, and, in the same con-
nection, said that counsel could argue to the jury that
they left because of lack of heat in the building. But the
objection to her stating that some of the teachers left
"just previously" was properly sustained. This fact had
no apparent relevancy to any question arising out of the
plaintiff's covenant as to heating. The first and tenth
assignments are overruled.

The lease contained no covenant as to papering. But
the promise of the plaintiff, as expressed in the letter of
its secretary, was "to do what papering is necessary."
This was a large building which, under the evidence, con-
tained many more rooms than were needed for the accom-
modation of the pupils in attendance. The court properly
held that this promise did not require every room that
was unpapered to be papered. And a wide latitude was
given in the admission of evidence as to the number of
pupils in attendance, the rooms needed for their accommo-
dation and for the general purposes of the boarding school,
the condition of those rooms, and the amount of papering
that was done. A considerable portion of the time oc-
cupied in the trial was taken up in the giving of evidence,
pro and con, upon this question of papering. No good
purpose would be served by an attempt, on our part, to

recapitulate the testimony upon the subject, and to do so would unduly prolong this opinion. We therefore summarize our conclusion by saying that, upon an examination of the whole record of the testimony, we cannot find that any competent testimony bearing upon the question whether the plaintiff complied with its promise as to papering, as that promise is properly construed, was excluded. The second, third, sixth and seventh assignments are overruled.

The fourth and fifth assignments relate to the rejection of offers of evidence as to the amount of money which the defendant invested in furniture, pianos, and other articles for the school building; and in one of the offers it is stated that her prospects of running a school were ruined by the failure of the plaintiffs to carry out and perform their covenants to repair the building. The learned judge, in passing upon these offers, said that he would allow the witness to tell how many scholars were forced to leave; "she may say how many left, how many she has there." The specific offer was rejected evidently because the learned judge deemed the evidence, as a basis of measuring the defendant's damages, too speculative. We entirely concur in this conclusion. Unquestionably, loss of prospective profits may be shown as a basis for estimating damages for breach of a contract; but these cases are exceptional, and the evidence ought to be sufficiently clear to enable the jury to ascertain, with reasonable certainty, the profits that would have been made. In Wilson v. Wernwag, 217 Pa. 82, Mr. Justice Mestrezat, after an exhaustive review of the cases, thus lays down the principle: "From these authorities, it is clear that damages may be recovered for loss of profits caused by a breach of contract; and that they are never excluded simply because they are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages if the evidence is sufficiently certain and definite to warrant the jury in

estimating their extent. . . . The law does not require absolute certainty as to the data upon which profits are to be estimated, but certainty to a reasonable degree or extent so that the damages may rest upon a definite basis and not wholly in speculation and conjecture." See also Hendler v. Quigley, 38 Pa. Superior Ct. 39; Foehr v. New York Short Line R. R. Co., 40 Pa. Superior Ct. 7. We fail to see how a jury could arrive at any reasonably certain estimate of profits that the defendant may have lost, from mere proof of the amount of money that she expended in equipping the seminary. These assignments are overruled.

The eighth, ninth and eleventh assignments of error do not require particular discussion. The reasons for rejecting the offers sufficiently appear in the assignments themselves, and are, in our judgment, valid. These assignments are overruled.

The twelfth and thirteenth assignments relate to the rejection of offers to prove the bad condition of the roof of the seminary and the consequences ensuing from its not being placed in proper repair. It will be noticed from the quotations we have made from the lease itself and from the letter of the plaintiff's secretary, that the plaintiff entered into no specific promise or engagement with regard to this matter; and it is well settled that there is no implied obligation on the part of the landlord to make such repairs. The authorities upon the subject are numerous and conclusive. See Jackson and Gross on Landlord and Tenant, sec. 963, and cases cited in the notes. "In the absence of an express agreement there is no implied obligation on the landlord to repair demised premises. . . . If they burn down he is not bound to rebuild. The rule here, as in other cases, is caveat emptor. The lessee's eyes are his bargain. He is bound to examine the premises he rents, and secure himself by covenants to repair and rebuild:" Moore v. Weber, 71 Pa. 429. The weakness of the defense, so far as this branch of the case is concerned, arises out of the fact that the defendant did not insist on specific covenant, on the part of the plaintiff,

to make such repairs as are referred to in these offers of evidence, but placed reliance on the plaintiff's promise to do what it deemed essential for the good of the building. These assignments are overruled.

The judgment is affirmed.