Bentz et al., Appellants, *v.* Barclay et al.

Argued September 26, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Lambert Turner* and *G. A. Shutack,* with them *Weil, Christy & Weil,* for appellants.—The rule requiring parol evidence to be clear, precise and indubitable is not applicable to this case: Holloway v. Frick, 149 Pa. 178; McCauley v. Keller, 130 Pa. 53; Kime v. Ice Co., 240 Pa. 61.

A subsequent verbal agreement modifying the terms of a written instrument may be established by a mere preponderance of evidence: Germantown Dairy Co. v. McCallum, 223 Pa. 554; Holloway v. Frick, 149 Pa. 178; Anstead v. Cook, 291 Pa. 335.

When the term "clear, precise and indubitable" is used in connection with the standard of proof required to establish certain facts, it is error for the court to charge the jury that the evidence must be indubitable in the sense that it leaves no doubt in the jury's mind: Young v. Edwards, 72 Pa. 257; Spencer v. Colt, 89 Pa. 314;

Ott v. Oyer, 106 Pa. 6; Boyertown Nat. Bk. v. Hartman, 147 Pa. 558.

*R. A. Applegate,* with him *Rose & Eichenauer,* for appellees.—Plaintiffs' counterclaims should not have been admitted in evidence or submitted to the jury: Jones v. Gas & Elec. Co., 289 Pa. 128; Ford Chain Block & Mfg. Co. v. Hess's Est., 55 Pa. Superior Ct. 587; Mitchell v. Standard Repair Co., 275 Pa. 328; Lee-Strauss Co. v. Kelly, 292 Pa. 403; Kennedy v. McSorley, 68 Pitts. L. J. 855.

A grant of the right to mine coal is the grant of an interest in the land itself: Lazarus's Est., 145 Pa. 1; Caldwell v. Fulton, 31 Pa. 475; Duke v. Hague, 107 Pa. 57; Gardner's Est., 199 Pa. 527; Hosack v. Crill, 18 Pa. Superior Ct. 90.

In the present case, the term prescribed by the written instrument expired before the coal had been removed, and the parties by parol extended the time. This, however, does not change the character of the instrument nor render the agreement parol: Green v. Roberts, 5 Whart. 84; McCombs v. McKennan, 2 W. & S. 216; Shaneman v. Core, 2 W. N. C. 540.

The grant of the right to take coal from another's land, whether in form an easement, a license, a profit *a prendre,* a sale or a lease, is the grant of an interest in land and as such entitled to the protection of the statute of frauds: Huff v. McCauley, 53 Pa. 206; Advance Industrial Supply Co. v. Copper Co., 267 Pa. 15, 20; Stoughton's App., 88 Pa. 198.

OPINION BY MR. JUSTICE SADLER, November 26, 1928:

On February 22, 1923, Barclay and Seidler granted to the Bentz heirs, present appellants, the right to strip coal on certain designated land for a period of six months, the privilege being given to take not less than thirty thousand, nor more than sixty thousand tons. A nominal rental was named with provision for the pay-

ment of a royalty for each ton taken out, dependent in amount on the sale price of the product. The contract provided, in part, as follows: "It is understood and agreed that this agreement shall continue for a period of six months from the date hereof and no longer...... Failure to make these payments of rental on demand, shall be deemed an abandonment of this agreement. All royalties which shall hereafter become due under the terms of this agreement shall be deemed and taken for all purposes as rents reserved under the laws of this Commonwealth relating to the relation of landlord and tenant and the parties of the first part [the present defendants] are hereby given all of the remedies under existing laws for the collection of such rentals, including the right of distress on any of the property of the parties of the second part [the plaintiffs] in or on said premises." Actual operations upon the property continued beyond the time fixed, and the lessees held over and carried on their mining operations until March 1, 1925, when work ceased.

During the period of tenancy, coal had sold in excess of $2 a ton, and royalties were admittedly due for November and December, 1924, and January, 1925, to the amount of $6,943.15, with interest. Payment was refused, and, as a result, the lessors issued a writ of distress to recover the unsatisfied rental, causing to be seized a steam shovel worth $12,000. To secure possession of it, a writ of replevin was issued by the lessees. A bond was given, and the machinery retained by them. In the issue framed, the landlords were named as defendants, and to the statement of claim an affidavit of defense was filed, asserting the indebtedness for the unpaid royalties to the amount already mentioned. A replication of plaintiffs was interposed making counterclaims for various sums in excess of the unpaid rent, and a trial was had, resulting in a judgment for the lessors for the full amount, which the court below refused to set aside, and plaintiffs have appealed.

Before considering the real controversies raised, it may be well, in view of the arguments submitted here, to note that the original contract was a lease for six months with the right to remove a certain tonnage of coal, and not a sale of all of that material in place. It conveyed the right to the temporary use and occupation of the land for a determinate period, with the right to remove a limited amount of material. It was merely a lease, and the royalty due was rent, for which a distress might be had (Greenough's App., 9 Pa. 18), and not a sale of all the coal in place, as in Sturdevant v. Thomson, 280 Pa. 233, and Robinson v. Pierce, 278 Pa. 372, where the distinctions applicable in such cases are drawn and discussed. Since the relationship created was that of lessor and lessee, and the term was less than three years, the statute of frauds has no bearing on the case (Sheets v. Allen, 89 Pa. 47; Cole v. Elwood Power Co., 216 Pa. 283), and, as the lessees held over under their grant, the stipulations fixing the rights of the respective parties continued in force until the abandonment of the property: Katz v. Wagoner, 92 Pa. Superior Ct. 363; Phillips v. Monges, 4 Whart. 226. The plaintiffs must therefore be treated as tenants, and the defendants as landlords, having the right under their lease to distrain, which privilege they exercised. And, in considering the questions raised, it is to be kept in mind that this is not an action of assumpsit for rent, but one of replevin for goods seized by the lessors, under which circumstances different rules are applied where a set-off is insisted on: Trickett on Landlord and Tenant 140; Kelly v. Miller, 249 Pa. 314.

In the present case it is admitted that the rent claimed is due, but counterdemands are interposed based, as averred in the replication, on three separate and independent agreements made supplemental to the lease itself. First, the claim is made that the parties agreed, in June, 1924, that "the defendants would pay the plaintiffs one-half of the increased cost of production" of coal

to be taken from another point on the same tract of land, which was to be used, in the proportion of 40% with that already leased for a fixed royalty under the agreement of February 22, 1923, so that the mixture thus secured could be more advantageously marketed, and it is averred the additional outlay amounted to a designated sum. This was not an alteration of the royalty to be paid under the lease, but a distinct undertaking to make certain payments if other coal was also mined and used. Second, the attempt is to set-off the cost of repairs to a railroad, which it is insisted defendants "had agreed to pay,"—a separate transaction; and, third, that the lessors had promised to reimburse for the expenditure for labor incident to the putting out of a mine fire. The total of all of these claims is in excess of the amount due for royalties under the lease upon which the distress proceeding was based.

It was testified, against objection on this ground, that it was understood these sums were to be deducted from accruing rent, but no such averment appears in the pleadings, and no effort to amend them to thus permit proof of a parol modification of the royalty requirement in the original lease was made, and the evidence as to other promises than the independent agreements to pay certain sums, as set forth, should have been rejected. It will be noted further that, after June, 1924, when the supposed additional oral contracts to make certain allowances to the lessees were stipulated for, they continued to pay on the original royalty basis, and first made the suggestion that there was any sum due to them by reason of the parol understandings when the property was abandoned in March, 1925, and the right to set them off against royalties overdue for previous months was then asserted.

At the trial, parol evidence was offered to show the supplemental contracts to pay, and this question was submitted to the jury, but under instructions that the testimony to be effective must be clear, precise and in-

dubitable, and convincing beyond doubt. These statements as to the weight to be accorded to the proof are now complained of by appellants, and we think properly so. There was no attempt to establish a contemporaneous parol agreement, omitted by fraud, accident or mistake, but to prove a later understanding arrived at, and not to vary or contradict the original lease. "It is always competent for the parties to a written contract to show that it was subsequently abandoned, in whole or in part, modified, changed, or a new one substituted": Holloway v. Frick, 149 Pa. 178, 180. "Where the effort is not to contradict the terms of a written contract, but merely to show a subsequent modification, or waiver of something provided for in the contract [or add a new and supplemental agreement], while the burden is on the party asserting the change, all that is required is that the evidence in support of the claim should be convincing to the jury": Anstead v. Cook, 291 Pa. 335, 339; Producer's Coke Co. v. Hoover, 268 Pa. 104; Germantown Dairy Co. v. McCallum, 223 Pa. 554. The testimony need not produce absolute certainty (Spencer v. Colt, 89 Pa. 314), or satisfy beyond a reasonable doubt: Ott v. Oyer, 106 Pa. 6. The learned trial judge laid down too stringent a rule, and plaintiffs have just reason to complain of the instructions given, and, were it not for the fact that we deem the error harmless, since appellants were not entitled to a verdict under the evidence, a new venire would have to be granted. If the counterclaims, attempted to be set up against the demand for rent admittedly due, were not available to the lessees in this proceeding, then it is immaterial that there was an erroneous instruction, as to the weight to be given to the evidence by which the attempt was made to establish them: Jones v. Counties Gas & Electric Co., 289 Pa. 128.

It was early held, and the rule has been consistently followed, that ordinarily a counterclaim or set-off against rent due is not available in an action of replevin

resulting from a distress upon goods of the tenant. The very words of the Defalcation Act make it inapplicable, for it is clear that the replevin is not an action commenced by the lessor, nor is it a suit based on a "debt, bargain or assumption" by the landlord, but rather on a tortious taking by him. The reasoning of the court in Beyer v. Fenstermacher, 2 Whart. 95, 98, is controlling. The legal rule applicable to such cases was recognized when, by statute, the tenant was permitted to secure a deduction from rent where his claim did not exceed $100, by a proceeding before a justice of the peace, which legislation has not been later extended.

So, claims for services performed cannot be set off in such a proceeding (Storner v. Abbott, 13 W. N. C. 209; Kennedy v. McSorley, 68 Pitts. L. J. 855); or damages arising from torts (Groetzinger v. Latimer, 146 Pa. 628; Clark v. McLanahan, 39 Pa. Superior Ct. 30; Lierz v. Morris, 19 Pa. Superior Ct. 73), or demands resulting from promises separate and distinct from the lease itself: Ford Chain Block Co. v. Hess's Est., 55 Pa. Superior Ct. 587; Spencer v. Clinefelter, 101 Pa. 219; Phillips v. Monges, supra. A like principle has been applied in the case of personal property seized by virtue of contract rights, the recovery of which was sought by replevin, and a set-off was claimed based on breach of warranty (Lee-Strauss Co. v. Kelly, 292 Pa. 403; Commercial Car Co. v. Murphy & Sons, 275 Pa. 105), false representations (General Motors Truck Co. v. Paving Co., 248 Pa. 499), storage charges (Mitchell v. Standard Repair Co., 275 Pa. 328), or demurrage: Nicolette Lumber Co. v. People's Coal Co., 213 Pa. 379.

An exception to the rule mentioned is found where fraud enters into the formation of the contract, for then there is a failure of consideration, and a successful defense may be interposed: Wolfe v. Arrott, 109 Pa. 473; Fairman v. Fluck, 5 Watts 516; Hollidaysburg Seminary Co. v. Gray, 45 Pa. Superior Ct. 426. So there may be a deduction, where this course was expressly

agreed on (Guernsey v. Moon, 46 Pa. Superior Ct. 645), or the obligation arises from the contract itself, as in the case of the failure to comply with an express covenant to repair: Spencer v. Clinefelter, supra; 36 C. J. 567. Where, however, the liability arises not directly from the covenants of the lease, but as the result of some independent or supplemental understanding, then the right to set-off does not arise. It may be that the tenant has legally enforceable claims against the landlord, but these cannot be taken advantage of as a counterclaim in a distress proceeding, and the set-offs here asked, based on separate and distinct agreements to pay, are not available in this proceeding.

What was said in Clark v. McLanahan, supra, p. 33, may be appropriately repeated here: "It is true enough that it is the policy of our law to avoid unnecessary circuity of action. And it is further true that, under our system of administering the laws, an equitable defense may often be successfully made to a legal demand even when the latter is sought to be enforced in one of the ancient common law forms of action. But these principles must be understood and applied in the light of those other and fundamental ones which determine the suitor in the selection of an appropriate remedy, and guide and control the practice and procedure through which that remedy is made effective. It has been the aim of the law, during the ages through which it has been slowly evolved, to develop, not one remedy for all wrongs, but an appropriate remedy for every wrong. Although our legislature, in recent years, has made some changes in the procedure incident to an action of replevin, the nature and purpose of the action remain what they were a century ago."

The present plaintiffs may assert their demands, based on the supplemental agreements, which did not modify the original promise to pay fixed royalties, and which were not by agreement to be deducted from the rent becoming due under the lease of February 22, 1923, in so

far as claimed by the pleadings, but cannot make use of any sum payable to them as a defense to the action of replevin now before us. For this reason the verdict must be upheld, though error was committed in the instructions as to the effect and weight of the evidence submitted to show the new promises. Under the circumstances, this error is to be treated as harmless. The other assignments of error, based on the refusal to affirm requests that the counterclaims were properly to be considered as a set-off against the rent admittedly due, must also be overruled.

The judgment is affirmed.