J-A25007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DONNA L. ALLISON AND STEVEN M. ALLISON, WIFE AND HUSBAND, AND DAVID A. ALLEN AND LUCINDA R. ALLEN, HUSBAND AND WIFE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | |
| RICE DRILLING B., LLC AND EQT PRODUCTION COMPANY | : : : | No. 537 WDA 2021 |

Appeal from the Order Entered April 14, 2021,
in the Court of Common Pleas of Greene County,
Civil Division at No(s):  AD No. 211-2019.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED: DECEMBER 30, 2021**

This case concerns three oil-and-natural-gas leases on a tract of land in Greene County.  David Allen and Donna Allison, who inherited that land from their father (Jesse Allen), appeal from an order denying them partial summary judgment and granting summary judgment to Rice Drilling B., LLC and EQT Production Company.[1]  Because the trial court misapplied the law of tenancies-at-will and there is a genuine issue of material fact, we affirm the denial of partial summary judgment to the Allens, reverse the grant of summary judgement to the Companies, and remand for trial.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mr. Allen and Ms. Allison's spouses are also plaintiffs, and Ms. Allison changed her last name upon marrying Mr. Allison.  For the sake of simplicity, we refer to all four plaintiffs collectively as "the Allens."  Additionally, we refer to the defendants as the "Companies."

Based on discovery, the parties agree that, in the early 1900s, the Sayers Family owned the Allens' land. On June 14, 1913, the Sayers executed an oil-and-natural-gas lease with Carnegie Natural Gas Company ("CNG"). The 1913 Lease would run for "as long . . . as oil or gas, or either of them is produced from the said land by [CNG], its successors and assigns." Trial Court Opinion, 4/14/21, at 3. In exchange, CNG agreed to provide free gas to a home on the property and to pay the Sayers $125, per well drilled, every three months. The parties later reduced the payment to $100, per well, annually.

CNG drilled one well on the property and connected it to a transmission pipeline that runs through and off the property. It also ran a gas line from the transmission pipeline to the Sayers' home.

The Allens' parents purchased the property on June 27, 1957. The parties agree CNG continued providing free gas and paying Jesse Allen $100 annually. They also agree that the well continued producing until 1991, but they disagree about whether it produced gas thereafter.

According to an industry database, CNG last entered a production record for the well on September 30, 1991. Thereafter, CNG no longer reported the well as producing gas to the Pennsylvania Department of Environmental Protection ("DEP") or in industry databases.

However, no one plugged the well. This omission prompted one of the Companies' witnesses to testify at his deposition that "old wells are always [in] that gray area . . . and unless [the database] specifically states that a well is basically plugged [with] cement filled in, then there is always a

- 2 -

possibility that that well could be producing, in some way, shape, or form." Depo. of Eakin, 11/7/19, at 25. Based on his history and experience with old wells in Greene County and West Virginia, the witness said, "these wells were Carnegie Natural Gas, and a lot of these wells around here haven't been plugged, so, they really still are producing." *Id.* at 26 (some punctuation omitted).

Another witness for the Companies agreed. He said, "If they are old wells, without any meters on them, they can just be open into pipeline, sales line, and . . . they could be flowing gas, that is, going down the pipeline, but we are not measuring it, or recording it in any of our databases." Depo. of Lamm, 3/3/20, at 104. Thus, the well may or may not have ceased production of natural gas in 1991.

On May 27, 1999, EQT Corporation acquired CNG, and the Companies succeeded to CNG's rights under the 1913 Lease. They continued giving Jesse Allen free natural gas and making $100 payments throughout his life.

In May of 2016, the Companies began hydraulicly fracturing and extracting natural gas from the section of the Marcellus Shell Formation beneath the property. Three months later, Jesse Allen died, and his children jointly inherited the land. The Allens did not inform the Companies of their father's death. Instead, they refused to cash any of the $100 checks that kept arriving in Jesse Allen's name.

Eventually, the Allens entered two, identical oil-and-natural-gas leases with Rice Drilling for the property. Unlike the 1913 Lease (that provided $100

- 3 -

and free gas to one home), the 2017 Leases granted the Allens 18.5% gross royalties for all gas produced from their land. Rice Drilling also paid the Allens two signing-bonuses of $384,963.75, one for each of the 2017 Leases.

That autumn, EQT and Rice Drilling merged, and several hydraulic-fracturing wells began producing natural gas from the Allens' property. The Companies began paying the Allens $100, per well, based on the 1913 Lease, rather than the 18.5% gross royalties under their 2017 Leases with Rice Drilling.

On March 18, 2019, the Allens sued the Companies for breach of the 2017 Leases. The Companies filed an Answer and asserted a counterclaim for declaratory judgment that the 1913 Lease remains in full force and effect.

After discovery closed, the parties moved for summary judgment. The trial court denied the Allens' request for partial summary judgment on the counterclaim and granted summary judgment in favor of the Companies. This timely appeal followed.

The Allens raise eight appellate issues. All of those issues are actually sub-issues of the main question on appeal: Did the trial court properly deny the Allens partial summary judgment on the Companies' counterclaim and properly grant summary judgment to the Companies?

The eight sub-issues challenging the summary-judgment order are as follows:

1.  Did the 1913 Lease automatically terminate under Pennsylvania law when oil and gas production from the [CNG-drilled] well ceased in 1991?

- 4 -

2.      Did the cessation of production from the well in 1991 and the resulting automatic termination of the 1913 Lease entitle the [Allens] to their requested partial summary judgment?

3.      Were the Companies entitled to summary judgment on their counterclaim . . . even though . . . the Companies conceded at summary judgment that they held rights under a tenancy-at-will?

4.      [D]id subsequent oil and gas production attributed to the property . . . in 2016 [reinstate] the 1913 Lease?

5.      [D]oes the [2016] commencement of oil and gas production prevent [the Allens] from terminating the tenancy-at-will?

6.      [D]id the record support a finding that a tenancy-at-will arose?

7.      Were the 2017 Leases inoperative "top leases" [that the 1913 Lease superseded]?

8.      Was there a question of fact about whether the 2017 Leases were intended as "top leases?"

The Allens' Brief at 11-14.

Our analysis addresses sub-issues one through six, which fully dispose of this appeal. As we explain, a critical issue of fact (whether the CNG-drilled well ceased production in or after 1991) remains unresolved. Thus, no party is entitled to summary judgment.

When a trial court rules upon a motion for summary judgment, it awards or denies judgment as a matter of law. Accordingly, the "question of whether summary judgment is warranted is one of law, and thus our standard of review is *de novo*, and our scope of review is plenary." ***City of Philadelphia v. Cumberland Cty. Bd. of Assessment Appeals***, 81 A.3d 24, 44 (Pa. 2013).

"Summary judgment may be entered only where the record demonstrates that there remain no genuine issues of material fact, and it is apparent that the moving party is entitled to judgment as a matter of law." *Id.*, citing *Chepkevich v. Hidden Valley Resort, L.P.,* 2 A.3d 1174, 1182 (Pa. 2010). "We must view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Carlino E. Brandywine, L.P. v. Brandywine Vill. Ass'n*, 197 A.3d 1189, 1199 (Pa. Super. 2018).

*1.      The Allens' Motion for Partial Summary Judgment*

We address sub-issues one and two together, because they essentially ask the same question. The Allens assert the 1913 Lease expired, because they claim the CNG-drilled well stopped producing gas. They believe that they are entitled to judgment, as a matter of law, on the Companies' counterclaim, which seeks a declaration that the 1913 Lease remains in full force and effect. We disagree with the Allens.

An oil-and-natural-gas lease is simply a lease. Like any other lease, the law of contracts governs. *See, e.g., Amoco Oil Co. v. Snyder*, 478 A.2d 795, 798 (Pa. 1984). Thus, we interpret the lease pursuant to its terms. *See Id.*

"The accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *Willison v. Consolidation Coal Co.*, 637 A.2d 979,

- 6 -

982 (Pa. 1994). "It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Id.* (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)).

Here, the 1913 Lease endures "as long . . . as oil or gas, or either of them is produced from the said land by [CNG], its successors and assigns." Trial Court Opinion, 4/14/21, at 3. By that language, the duration of the 1913 Lease is tied to the ability of CNG and its successors to continue producing oil or natural gas from the property. Thus, the clause is not limited to the CNG-drilled well from 1913. If CNG or its successors commenced oil or natural-gas production at other wells on the property while the CNG-drilled well continued to produce, the duration clause would extend to those additional wells. On the other hand, if the CNG-drilled well ceased to produce before another well went into production, then the 1913 Lease expired.

The parties agree that the only extraction point for oil or natural gas on the property was the CNG-drilled well until the Companies began natural-gas production from the Marcellus Shell Formation in May of 2016. Accordingly, if the CNG-drilled well ceased production **anytime** between September of 1991 and May of 2016, then the 1913 Lease expired. However, if the CNG-drilled well continually produced natural gas through May of 2016, then the 1913 Lease remains in full force and effect.

- 7 -

The Allens sought summary judgment on the counterclaim, wherein the Companies requested declaratory judgment that the 1913 Lease remains in full force and effect. Thus, we must view the proffered evidence in the light most favorable to the Companies (*i.e.*, the nonmoving parties) to resolve the first and second sub-issues.

The Companies offered deposition testimony from employees who have experience with CNG-drilled wells in the Greene County area. They testified that, where, as here, the CNG-drilled well is not capped with cement, then the well is likely continually producing some natural gas. This production occurs even though it went unrecorded in any database and unreported to the DEP. If the fact finder accepts this testimony as true, the Companies will win their declaratory-judgment counterclaim, because the 1913 Lease will remain in full force and effect, pursuant to its clear and unambiguous language.

We must accept the testimony of the Companies' employees as true to resolve the Allen's motion for summary judgment. **See Carlino E. Brandywine, L.P.**, **supra**. Also, the "witnesses' credibility is a determination for the [fact finder] and necessarily creates a genuine issue of material fact." **Gruenwald v. Advanced Computer Applications, Inc.**, 730 A.2d 1004, 1009 (Pa. Super. 1999).

As a result, the Allens are not entitled to partial summary judgment.

*2.     The Companies' Motion for Summary Judgment*

The Allen's third through sixth sub-issues focus on the trial court's grant of summary judgment to the Companies. Because we are now reviewing the

Companies' motion for summary judgment, our scope of review shifts to examine the proffered evidence in the light most favorable to the Allens (*i.e.*, the nonmoving party).

Hence, the following analysis rests upon the assumption that the fact finder will discredit the testimony of the Companies' witnesses regarding the CNG-drilled well's production of natural gas after 1991. Instead, we now presume the fact finder will infer, from the absence of any post-1991 records of production at the CNG-drilled well, that it ceased producing any natural gas, whatsoever.[2] As explained above, this factual presumption (if true) leads to the conclusion that the 1913 Lease expired, under its own terms, in September of 1991, because there were no other oil or natural-gas extraction points on the property at that time.

In this scenario, the question is whether the Companies may enforce the 1913 Lease's duration provision after the 1913 Lease expired. The trial court held that they may. First, the court correctly determined that, if the CNG-drilled well ceased production in 1991, then the relationship between the parties "became a tenancy-at-will, terminable by either party." Trial Court Opinion, 4/14/21, at 4, *citing* **Cassell v. Crothers**, 44 A. 44 (Pa. 1899).

_____

[2] We note that "the drawing of inferences of fact from the evidence . . . is the province of the jury." **Mayne v. Fid. & Deposit Co. of Maryland**, 48 A. 469 (Pa. 1901). Moreover, the trial court correctly held that the Allens have the burden of proving the termination of the 1913 Lease. **See** Trial Court Opinion, 4/14/21, at 4. This includes proving the cessation of gas production from the CNG-drill well between 1991 and the beginning of natural-gas extraction from the Marcellus Shell Formation in May of 2016.

However, the trial court misapplied the law governing tenancies-at-will when it granted summary judgment to the Companies.

The court believed "the success of each party's motion [for summary judgment], depends upon timing." *Id.* In the trial court's mind, the time frame in which the Allens could unilaterally terminate the tenancy-at-will ran from the cessation of natural gas production in 1991 to the commencement of Marcellus Shell extraction in May of 2016. The court essentially held that the tenancy-at-will reverted to the duration clause found in the 1913 Lease when production resumed and thereby revoked the Allens' authority to terminate the leasehold whenever they desired. The trial court cites no law to support its reversion-to-the-1913-duration-clause theory. *See id.* at 5.

Tellingly, the Companies do not assert the trial court's timing analysis is correct. *See* Companies' Brief at 53-57. They only offer a vague statement: "Since [the Allens] did not terminate the lease before the Marcellus Shale production . . . commenced in May of 2016, the terms of the [1913 Lease] continue to govern the tenancy." *Id.* at 54. To support this assertion, the Companies rely on two cases: *Bentz v. Barclay*, 144 A. 280 (Pa. 1928), and *Routman v. Bohm*, 168 A.2d 612 (Pa. Super. 1961). Neither is on point.

We begin with *Bentz*. There, landowners granted Bentz the right to mine coal on their land. Despite language that the lease would terminate after six months, Bentz continued mining coal for two years. A dispute arose as to the amount of royalties that Bentz owed his landlords and a lawsuit for rents and replevin ensued. In resolving the rents due, the Supreme Court of

- 10 -

Pennsylvania stated, "as the lessees held over under their grant, the stipulations fixing the rights of the respective parties continued in force until the abandonment of the property." *Bentz*, 144 A. at 281.

Unlike the 1913 Lease at bar, the language of Bentz's lease did not tie duration to continued resource production. Moreover, the *Bentz* Court does not state (much less decide) what type of tenancy arose after six months of mining. Thus, *Bentz* has no bearing upon a tenancy-at-will. Instead, *Bentz* deals with holder-over tenants' obligations to pay rent pursuant to the terms of an expired lease, not the duration of or rights to terminate a holdover tenancy. The Companies' reliance upon *Bentz* is misplaced.

Turning to *Routman*, there, a group of apartment tenants for a term of years held over after the expiration of their lease. This Court held they "became tenants *from year to year*," not tenants-at-will. *Routman*, 168 A.2d at 615. The Companies overlook that critical distinction when discussing this case. *Routman* does not support the theory that the defunct, duration clause of the 1913 Lease reactivates upon the commencement of new oil or natural-gas production.

Such reinstatement would impermissibly negate the tenancy-at-will. In this Commonwealth, "A tenancy-at-will has an indefinite term of duration and is *terminable at the will* of either the lessor or the lessee." SUMMARY OF PA. JUR. (SECOND) § 26:43 at 67 (emphasis added) (citing *Flomar Corp. v. Logue*, 210 A.2d 254 (Pa. 1965)). This rule applies to tenancies-at-will that arise after an oil-and-natural-gas lease expires.

For example, in ***Heasley v. KSM Energy, Inc.***, 52 A.3d 341 (Pa. Super. 2012), this Court determined that an oil-and-natural-gas lease, which expired upon cessation of production, became a tenancy-at-will that the landowner-lessor could unilaterally terminate. "When production ceased, the lease became an at-will-tenancy, subject to termination by the lessor ***at any time.***" ***Id.*** at 346–47 (emphasis added). "Heasley elected to terminate [the tenancy-at-will], first by ceasing to accept KSM's payments after 2009, and second and more definitively, by filing suit asking the court to deem the leases to be terminated. That was his right under the law." ***Id.*** at 347.

Assuming production at the Allens' property ceased between September of 1991 and May of 2016, under ***Heasley***, a tenancy-at-will arose. That new tenancy continued until the Allens unilaterally terminated it by ceasing to accept the $100 payments from EQT, even though they did so after Marcellus Shell extraction began. They "more definitively" terminated the tenancy "by filing suit asking the court to deem [it] to be terminated. That was [their] right under the law." ***Id.*** at 347.

Resumption of oil or natural-gas production on the property during a tenancy-at-will has no bearing upon either party's right to terminate that form of tenancy. The tenancy-at-will "has an ***indefinite*** term of duration and is terminable at the will" of either party. SUMMARY OF PA. JUR. (SECOND) § 26:43 at 67 (emphasis added). If such a tenancy arose, the Allens could terminate it "at any time." ***Heasley***, 52 A.3d at 347.

Thus, the trial court erroneously held that "the success of each party's motion [for summary judgment], depends upon timing." Trial Court Opinion, 4/14/21, at 4. The success of both motions for summary judgment depends, instead, upon the factual question of whether the CNG-drilled well stopped production between September of 1991 and May of 2016. That question can only be answered at trial. No one is entitled to summary judgment.

Therefore, the trial court erred by granting summary judgment to the Companies.[3]

Order affirmed in part and reversed in part. Case remanded for trial.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/30/2021

---

[3] The trial court's "top lease" analysis is now irrelevant to our disposition of this appeal. Therefore, we dismiss the seventh and eighth sub-issues as moot.