## Burnside *against* Weightman.

A written agreement for the sale of land, described as "the premises as it now stands, with all the improvements, of whatever kind it is in possession of, either houses or lands of whatever kind," by the terms of which a conveyance is to be made at a future day, is such an equitable transfer of the grain growing upon the land, as vests the title to it in the vendee, and enables him to recover it from a subsequent purchaser from the vendor, who had notice of the agreement for the sale of the land.

ERROR to the District Court of *Allegheny* county.

Samuel Burnside against William Weightman. This was an action of replevin for 400 dozen of wheat.

On the 3d of October 1837, William Maits was the owner of the land in fee on which the wheat (in a twelve-acre field) was the only growing crop. On that day, by written agreement, he leased the land to the defendant, William Weightman, for the term of five years, commencing on the 1st of April 1838, reserving by express stipulation, the said twelve-acre field of grain.

On the 25th of January 1838, by written articles between William Maits and the plaintiff, Samuel Burnside, the former agreed to sell and convey to the latter the same land for $6150 : the deed to be made and possession, &c. to be given, on the 1st of April 1838. On the 10th of April 1838, the deed was duly executed and delivered, and the said lease assigned to Burnside.

On the 5th of April 1838, William Maits sold the wheat in the ground to the defendant, William Weightman, for $70, for which he gave his note, payable in eight months. In February or March 1838, Burnside paid Maits $1000, part of the hand-money due the 1st of April. When the agreement of the 25th of January was entered into between Maits and Burnside, and when the deed was executed and delivered, nothing was said on the subject of the *growing crop ;* the plaintiff's title to the grain growing depended entirely upon the agreement and deed to him.

The plaintiff read in evidence the lease of the 3d of October 1837, by the terms of which the growing grain was expressly reserved ; and also the agreement of sale, which was as follows :

"Agreement made, &c. The above-named Burnside agrees to pay the above-named Maits at the rate of $50 per acre, for his plantation that he is in possession of at the present time. Terms of payment is as follows : that is, $3000 against the 1st of April first coming, the balance to be made in seven years by annual payments, equally divided, without interest for the same ; the said Maits agrees to give up to the said Burnside, against the 1st of

[Burnside v. Weightman.]

April, the premises as it now stands, with all the improvements of whatever kind it is in possession of, either houses or lands, of whatever kind; and likewise, before payment of any money, to give full satisfaction of an indisputable title for the same; for the true performance of the same we sign the above. Witness," &c.

The court below was of opinion that the agreement of sale of the land vested neither a legal nor equitable title to the growing grain in the vendee; and directed a verdict for the defendant.

*Hampton* and *Mahon*, for plaintiff in error. At the date of the agreement of sale, clearly the vendor was the owner of the land and the grain growing upon it; he was also then in possession of both, and both, as to him, were realty. By the agreement, he sold as well one as the other; for nothing is now better settled than that a sale of land is a sale of the grain growing upon it. 3 *Watts* 394; 7 *Watts* 378. After that period the vendor was a trustee of the estate for the vendee, and the vendee a trustee of the purchase money. 2 *Har. & Johns.* 66; 10 *Vez.* 613; 1 *Atk.* 573; *Sugd. Ven.* 173.

*Findlay, contra,* argued that, as a general principle, emblements are personal property. *Toll. Law of Exors.* 139; 1 *Rawle* 353. They may be seized and sold upon an execution as a chattel, and in all cases are considered personal estate, except that they will pass by a conveyance of the land; and this upon the principle, that it was the intention of the parties that they should pass; and that intention is implied from the rule, that the deed shall be construed most strongly against the grantor. In this case the owner of the. fee had by contract parted with a term of years out of the estate, reserving the growing grain; thus expressly separating the one from the other; after which, he entered into the agreement to sell the land, subject to the very agreement of lease by which he had separated the land and grain by parting with the one for a term of years, and retaining the other himself. He cited also 3 *Watts* 407.

The opinion of the Court was delivered by

SERGEANT, J.—The question in this case is, what passed by the agreement of the 25th of January 1838, from Maits to Burnside; whether by this conveyance the grain in the ground was transferred, which had been reserved by Maits when he leased to Weightman. For if it was, then Maits had no right in it on the 5th of April 1838, and could not sell it to Weightman or any other person.

Distinctions are to be found in the books how far, in cases of reservation in a conveyance of land, the thing reserved continues part of the soil or not. If a man lets his manor *exceptis omnibus boscis,* the soil of the woods is excepted, but it remains parcel of

[Burnside v. Weightman.]

the reversion of the manor, and will pass by a grant or lease of the manor. 5 *Co.* 11; *Cro. Eliz.* 521. But if one grant the reversion excepting the rent, this is a good exception, and keeps it from passing, and the rent is severed from the reversion and becomes a rent in gross. *Shep. Touch. by Preston* 78. By the grant of the herbage or vesture of the land, (and it is a rule that what will pass by words in a grant will be excepted by the same words in an exception, *Ib.* 100), the soil does not pass; for though he may have trespass *quare clausum fregit*, yet he shall have only the corn, grass, &c., and not the houses, trees, mines which are fixed to the soil. *Co. Lit.* 4 *b.* If one grant *viginti acras saliceti, fraxineti, lupuliceti*, &c., the wood growing only passes. *Co. Lit.* 4 *b.* So a grant of all saleable woods growing does not pass the soil. 2 *Cro.* 52. So of all the great wood, viz., oaks, as his, &c.; for the viz. explains what wood is intended. *Ib.; Roll.* 455; *Com. Dig. tit. Grant. E.* 5. So of all timber trees; for nothing passes, except the trees and so much of the soil as is requisite. 2 *Cro.* 487. In analogy to these authorities, it would seem, that by the reservation in the lease of the field of grain in the ground, the soil of the field was not reserved, but only the right to the grain, with authority to enter and carry it away when ripe, which was in the nature of a chattel interest remaining in Maits after the lease.

This being so, if the agreement between Maits and Burnside contained nothing more than an agreement to convey the land, the right to this grain, not being part of the land or real estate, might not have passed to Burnside. But whether it was part of the land or only a chattel interest relating to it, or devisable out of it, it was the sole property of Maits, to dispose of as he saw fit; and if he has chosen to do so by the plain and positive words of his agreement with Burnside, he could not sell it a second time to Weightman. And I think the words of the agreement between Maits and Burnside embrace this right, whether it be considered as part of the soil, or as a chattel interest devisable out of it. Burnside agrees to pay Maits " for his plantation that he is in possession of at the present time." And then Maits agrees to give up to Burnside " the premises as it now stands, with all the improvements of whatever kind it is in possession of, either houses or lands, of whatever kind." These words clearly import an intention to convey all that then was part of or connected with the land, or that it was in possession of; and I am not aware that any words could be used more strong to include the grain growing on the twelve-acre field, which the grantor had reserved in the former lease; the right once severed, might be re-annexed to the land and conveyed along with it, and he seems to have done so.

Then as to this being an article of agreement and not a deed, there is no difference in its construction, and it is in equity a transfer of the title, as full and binding from the time of its exe-

[Burnside v. Weightman.]

cution as a deed executed, except as to the rights of third persons, who have no notice of it. And if the defendant were in that position at the time he bought the grain, he might avoid the effect of the article: but if he had knowledge of the article of agreement, he could not acquire a title to the grain by Maits's conveyance of it to him after the execution of the article.

Judgment reversed, and a *venire facias de novo* awarded.