## Brier v. Ahlborn et al.

*V. R. Smith,* for plaintiff.

*O. S. Shields* and *Paul M. Robinson,* for defendants.

LAIRD, J. (McWHERTER, J., concurring), May 2, 1946.—On May 21, 1943, plaintiff entered into an agreement with defendants wherein plaintiff agreed, "to lease all coal belonging to Irene V. Brier, located in Hempfield Township, County of Westmoreland, Commonwealth of Pennsylvania, underlying the Wilson Shields Farm and Esli Summy Farm for a period of ten (10) years for the sum of twenty cents ($0.20) per ton. Right to strip coal or mine on the property of and belonging to Irene V. Brier. Royalty to be paid monthly to Irene V. Brier".

On April 4, 1945, plaintiff entered into an agreement of sale for all her interest in the above-mentioned coal to Ira Ahlborn and J. George Ahlborn. The purchase price was $600, $50 of which was paid at the signing of the agreement and the balance was to be paid upon delivery of the instruments of conveyance on the date of settlement, which was fixed as of October 4, 1945, or prior thereto at the opinion of the purchasers.

Defendants herein were working the coal operations before April 4, 1945, and on November 9, 1945, after suit brought, settled for all royalty payments due prior to April 4, 1945.

Before the date set for settlement the deal was closed and a deed delivered to defendants.

Between the date of the agreement for sale, April 4, 1945, and the delivery of the deed and final settlement, defendants had removed 22,954.558 tons of coal. At a royalty of 20 cents per ton this would amount to $4,590.91. The question of law involved in this action is whether plaintiff is entitled to this sum as royalties under the agreement of May 21, 1943, or whether the purchaser under the agreement of sale of April 4, 1945, is entitled thereto.

At the trial of this case the trial judge granted a compulsory nonsuit and the matter is now before the court en banc, on a motion to take off the nonsuit.

In addition to the formal reason that the judge erred in entering the nonsuit, plaintiff alleges two reasons in support of her motion. The second is that the judge erred in permitting defendants' counsel to cross-examine plaintiff concerning the written contract of April 4, 1945. This witness being plaintiff, counsel for defendant was entitled to a wide latitude in his cross-examination. This examination was entirely within the pleadings, inasmuch as a copy of the agreement is attached to and made a part of the affidavit of defense, and plaintiff admits in her answer to new matter that the agreement of sale of April 4, 1945, defendants' exhibit A, was executed between the parties thereto, and she testified freely on both redirect and cross-examination, admitting the execution of the agreement.

We are of opinion, therefore, that there is no sufficient ground to take off the nonsuit alleged in the second reason contained in the motion. There is no contention that the statements made by the witness are not true or that plaintiff was prejudiced by this examination at this particular time.

The other reason stated in the motion is that the judge erred in ruling that the contract of April 4, 1945, constituted a good and sufficient defense to the claim of plaintiff on the lease dated May 21, 1943.

If there had been no agreement such as the contract of May 21, 1943, then by virtue of the agreement of April 4, 1945, plaintiff would have held the legal title to the property, and the purchasers would have held the equitable title after April 4, 1945. In such case there is some authority in Pennsylvania that the vendor is entitled to rents accruing between the date of agreement for sale and the time for performance of the contract: Singer v. Solomon, 8 Dist. R. 402; Nicholson, Pennsylvania Law of Real Estate (3rd ed.) §162, p. 205; 1 Ladner, Conveyancing in Pennsylvania (2nd ed.) 92.

The reason for this rule is no doubt that it would be inequitable for the purchaser in possession to hold both the land and the purchase price. For the same reason it has been held that the purchaser is required to pay interest on the purchase price when the closing transaction has been unavoidably delayed beyond the date fixed by the agreement for settlement: Hershey's Estate, 213 Pa. 601; Witmer v. Delone, 225 Pa. 452.

It would, therefore, appear that the vendor of real estate is entitled to rent, between the time of the agreement for sale and the transfer of legal title, only in cases where the payments of rent are income in the nature of interest, but not where the rent is in reality payment for waste.

This view of the respective rights of the vendor and purchaser is indicated by the nature of their rights as to other matters affecting the land, some of which are as follows: Growing crops belong to the vendee: Burnside v. Weightman, 2 W. & S. 268; a judgment against the vendee is a lien on the land: Richter v. Selin, 8 S. & R. 425; the vendor cannot recover for injury to the land: Ives v. Cress, 5 Pa. 118; the vendee must bear any loss and is entitled to any accruing benefit: Kerr v. Day, 14 Pa. 112; proceeds of a fire insurance policy belong to the vendee: Reed v. Lukens, 44 Pa. 200, and Millville Mutual Fire Insurance Co. v. Wilgus, 88 Pa. 107; vendee may recover damage for injury to property: Hess v. Vinton Colliery Co., 255 Pa. 78.

It, therefore, becomes necessary to determine the nature of the payments stipulated for in the contract of May 21, 1943. The courts of this State have completely disregarded the languages of these instruments concerning minerals insofar as they state they are leases or sales. The courts have looked at the substance of each transaction and variously called them sales of coal in place or leases.

Where there is a "lease" of all the coal underlying a certain tract and no definite limit on the time of removal, the courts have said that the transaction is a sale of the coal in place: Burke v. Kerr, 142 Pa. Superior Ct. 37, affirmed in 341 Pa. 304; Robinson v. Pierce, 278 Pa. 372; Advance Industrial Supply Co. v. Eagle Metallic Copper Co., 267 Pa. 15. In Sturdevant et al. v. Thomson, 280 Pa. 233, where there was a lease of coal for 10 years on a royalty basis, the court held it was a sale of all the coal mined. However, in the case of Bentz v. Barclay et al., 294 Pa. 300, where there was a lease of coal for six months with a right to mine coal, within specified limits as to tonnage, on a royalty basis, the court held that the relation of landlord and tenant existed and there could be a distraint for rent to recover royalties due.

It is quite evident that in cases where the transaction is held to be a sale of coal in place, all ". . . the rules applicable to sales are not to be applied indiscriminately to such instruments but each is to be construed like any other contract by its own terms": Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28, 33. For example, the court held in Burke v. Kerr, supra, p. 40: "First that though the contract was called a lease, it was a sale of coal in place, . . . ; second, that the vendor retained an 'interest in the coal as land;' . . ." Conversely in cases where a transaction is held to be a lease of coal, all the rules applicable to leases are not to be applied indiscriminately. As far as the present case is concerned it makes no difference whether

the contract be held a sale of the coal in place or a lease thereof, the payments of royalties provided for are not such payments in the nature of interest or ordinary rent as should be awarded to plaintiff as vendor to compensate her for the loss of use of the purchase price until the date of settlement. The ordinary rule must be held to apply in this transaction that ". . . the purchaser to all intents and purposes becomes the owner of the land; the vendor retaining title merely as trustee to secure payment of the unpaid purchase money": Spratt v. Greenfield et al., 279 Pa. 437, 439. Plaintiff, vendor, is not entitled to royalties accruing after the execution of the agreement of sale, April 4, 1945, and since this is the only question involved in this case the motion to take off the nonsuit must be refused. Any other decision in this case could work a great hardship upon the purchaser. Assuming that the price agreed upon for the coal on April 4, 1945, represented the fair price of the coal then in place, and that the final settlement has been delayed unavoidably or by agreement until such a time as all the coal had been mined, then, adopting plaintiff's view, the purchaser would not only have to pay the purchase price but also the full royalties therefor. This certainly was not the intention of the parties on April 4, 1945. The purchaser had the right to mine the coal, subject to plaintiff's right to restrain defendants from such waste as would impair her security for the purchase price.

It appears, however, that in paragraph 9 of the statement she claimed that under the agreement of May 21, 1943, there was royalty due and unpaid for coal mined by defendants prior to April 4, 1945, and that defendants in paragraph 9 of their affidavit of defense admitted that there was due and owing to plaintiff the sum of $574.40 for coal mined by defendants prior to April 4, 1945, and it further appearing that after suit brought the following receipt was

404

placed on the record, evidencing the settlement of this dispute:

"Nov. 9, 1945, Rec'd of Defts the sum of $574.40, being the amount admitted to be due and owing to the plaintiff as set forth in Par. 9 of the affidavit of defense. V. R. Smith, Atty for Plff."

We are of opinion that defendants should pay the costs of this proceeding. See Wagner v. Wagner, 9 Pa. 214. We, therefore enter the following decree:

And now, to wit, May 2, 1946, after argument and after due and careful consideration, it is ordered, adjudged and decreed, both judges concurring, that the motion to take off the nonsuit be and the same hereby is refused, and defendants be and they are hereby directed to pay the costs of this proceeding.